**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 03-4189

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
DEC 1 7 2004
LEONARD GREEN, Clerk

CHERYL A. SOUTHERLAND,

    Plaintiff-Appellee,

v.

SYCAMORE COMMUNITY SCHOOL
DISTRICT BOARD OF EDUCATION,

    Defendant-Appellant.

) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
) SOUTHERN DISTRICT OF OHIO

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.
This notice is to be prominently displayed if this decision is reproduced.

INFORMATION COPY)
MANDATE NOT YET ISSUED
DIS. CT. # 02-162

Before: DAUGHTREY and SUTTON, Circuit Judges; FORESTER, District Judge.*

SUTTON, Circuit Judge. Sycamore Community School District challenges a $50,000 jury verdict in favor of Cheryl Southerland, a bus driver for the school district, who accused the district of sexual harassment and negligent retention. As the school district's challenges to the jury instructions and several evidentiary rulings are unconvincing, we affirm.

---

*The Honorable Karl S. Forester, Chief Judge of the Eastern District of Kentucky, sitting by designation.

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

I.

In 1997, the Sycamore school district hired Southerland to drive one of its school buses. From April of 1999 through January of 2000, Southerland was the victim of several instances of harassing conduct by another bus driver, Ralph Smith, which occurred in roughly the following order.

On April 19, 1999, during a lunch together, Smith asked Southerland "how is sex on a waterbed?" JA 253. When Smith later paid for this lunch, he noted, "Oh, you'll pay." JA 253. On April 20, 1999, he left a note on her bus asking her to lunch. Unhappy with this development, Southerland reported what had happened to her supervisor, Janet Schultz—also the sexual harassment officer for the transportation employees—but did not request that a harassment charge be filed. The next day, Smith left a cryptic note on Southerland's bus, leading Southerland to believe that Smith might be trying to "start something with [her]." JA 258. Southerland again showed the note to Schultz but said she would take care of the matter herself. Through the remainder of the school year, Southerland claimed, Smith would stare or leer at her, "not just at [her] eyes but up and down [her] body with [ ] a little grin on his face," JA 260.

When the next school year started, Southerland again noticed Smith staring at her. In September 1999, after Southerland heard that a rumor was spreading about a relationship between the two, she asked the school district to file a sexual harassment charge against Smith. Schultz, the sexual harassment officer for the bus terminal, did not personally pursue the charge, partially because

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

she was "uncomfortable with investigating" Smith. JA 212. Instead, Schultz told Sycamore's director of human resource management, Robert Szakovits, who directed Schultz to the Title IX officer, Peggy Phillips, and to counselor John Buchholz.

On September 27, 1999, Phillips and Buchholz started an investigation into Southerland's allegations. Schultz told Buchholz of two other drivers' complaints about offensive sexual behavior by Smith. Other evidence, relayed by Buchholz to Southerland, suggested that Smith was the source of the rumors about his purported relationship with Southerland. Buchholz advised Southerland to "buy a whistle or something loud to carry with you at all times." JA 267.

Buchholz and Phillips decided to "verbally admonish" Smith, JA 99, instructing him to stop spreading rumors and to stay away from Southerland. But Smith did not comply. He repeatedly tailgated Southerland in their respective buses, at one point causing Southerland to fear that they would collide. On an October 12, 1999, field trip involving several busloads of students, Smith boarded Southerland's bus along with three other drivers whom Smith had offered to take to lunch. He sat three rows behind her and stared at her through the mirror. Buchholz and Phillips gave Smith another verbal warning on October 18, 1999, but Smith violated the warning the very next day by approaching Southerland in the parking lot. Buchholz and Phillips drafted a letter memorializing their October 18, 1999, warning. They made note of Smith's October 19, 1999, violation in the same letter, apparently delivered to him some time later.

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

After the October 18, 1999, meeting, Smith increasingly tried to be in Southerland's presence, again in violation of the school district's directives. Southerland regularly reported the violations to Schultz, and Schultz reported them to Buchholz.

In November 1999, while driving her bus back to the school, Southerland began crying because she expected Smith to be waiting for her when she returned, prompting her to rear-end a car. The next day, her doctor prescribed anti-depressant medication, and Southerland took three weeks of leave from work. During that time, Southerland testified that she saw a jeep identical to Smith's pass her house at slow speed, and that the man in the jeep had hair similar to Smith's.

On November 29, 1999, Southerland returned to work. She received a letter from the school district copied to Smith again instructing him to avoid all contact with her. Smith again violated the directive multiple times the very next week, including by sending Southerland a Christmas card. Buchholz called Smith in again and read him another letter ordering him to stop all communication with Southerland.

At a December 16, 1999, holiday breakfast attended by Southerland, Smith arrived and explained to Shultz's assistant that Buchholz had made an exception to allow him to attend the breakfast. That afternoon, Buchholz confirmed via fax that Smith had lied about the exception, and Buchholz added that Smith was not to take part in another holiday luncheon scheduled the next day. But Smith again showed up at the December 17, 1999, luncheon, and the school district took no action against him.

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

On January 30, 2000, Smith passed Southerland on their respective bus routes. He made an exaggerated wave at her, and before long she felt chest pains. She returned to the base, clocked out and was taken to the hospital in an ambulance. Southerland went on medical leave until the following school year.

In February 2000, after Southerland took her leave, Sycamore suspended Smith. On February 29, 2000, at a due process hearing, Smith tendered his resignation, accepted by the School Board on March 1, 2000.

On March 8, 2002, Southerland filed eight claims against Sycamore. Before submitting the case to a jury, the district court dismissed all but the federal and state hostile-work-environment sexual harassment claims and the state negligent-retention claim. On August 15, 2003, the jury returned a verdict for Southerland on both issues and awarded her $50,000 in compensatory damages. Sycamore appeals, arguing that the jury verdict was tainted by faulty jury instructions and inadmissible evidence.

II.

Sycamore first raises two jury-instruction challenges. "Because the correctness of jury instructions is a question of law, we review de novo a district court's jury instructions." *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998). We review the instructions "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision," and "reverse the district court only if the

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Stewart*, 306 F.3d 295, 306 (6th Cir. 2002). We review a district court's "*refusal* to give a requested jury instruction under an abuse of discretion standard. A district court's refusal to give a jury instruction constitutes reversible error if (1) the omitted instruction is a correct statement of the law, (2) the instruction is not substantially covered by other delivered charges, and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 901 (6th Cir. 2004) (emphasis added).

A.

Sycamore argues that in instructing the jury on the negligent-retention claim the district court omitted one of the five elements of the claim. The Ohio-law claim, it is true, requires a plaintiff to prove five elements: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Evans v. Ohio State University*, 680 N.E.2d 161, 171 (Ohio Ct. App. 1996). And the instruction given to the jury, it is also true, does not explicitly mention "employee's incompetence" as the second element but asks whether "Mr. Smith was creating a potentially unsafe working environment for Ms. Southerland." JA 77.

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

But the instruction that was given neither prejudiced Sycamore nor eliminated the employee-incompetence element of the claim. Whatever else may be said about this claim, it is difficult to maintain that Smith was not acting incompetently. Harassing a fellow employee, if not indeed stalking her, hardly amounts to competent employee behavior. We do not read Sycamore's papers to argue otherwise. Nor, at any rate, does Sycamore tenably explain why the more specific instruction that was given—focusing on the question whether Smith was creating "a potentially unsafe working environment for Ms. Southerland" rather than asking more generally whether his conduct amounts to "employee[] incompetence"—was not consistent with this second element of the negligent-retention test. Creating a "potentially unsafe working environment" is the specific form of "employee[] incompetence" that was at issue in this case. No error occurred.

B.

Sycamore next challenges the district court's refusal to give Sycamore's proposed jury instructions on hostile work environment. In Sycamore's view, the instruction failed to emphasize that when an employer knows of and responds to a charge of sexual harassment, "mere negligence as to the content of the response cannot be enough to make the employer liable." *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 873 (6th Cir. 1997). In other words, Sycamore argues, once an employer is aware of harassment, it is liable "only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." *Id.* True enough. The problem is that the court's instructions adequately (though perhaps inartfully) covered this point. According to the district court's instruction:

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

> An employer may only be liable if it fails to implement prompt and appropriate remedial action. A plaintiff may demonstrate a school board's *deliberate indifference* to discrimination only where the school board's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances. Thus, where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior. Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such a district has failed to act reasonably in light of the known circumstances.

JA 76 (emphasis added).

In focusing on the instruction's use of the words "unreasonable" and "reasonable," Sycamore fails to account for the context in which those words appear. The instruction does not say that the school district's conduct should be assessed under a reasonableness test. The question is whether the district's response is "clearly unreasonable *in light of the known circumstances.*" (Emphasis added). And when the district's response is ineffective, the question is whether the district took "reasonable action *in light of those circumstances* to eliminate the behavior." (Emphasis added). The instruction, in short, does not permit liability for mere negligence in an employer's response. Confirming the point, the instruction describes the general standard at the outset as one of "deliberate indifference." It then merely provides an example of deliberate indifference: continuing to use knowingly ineffective measures. *Blankenship* itself, it bears adding, used the word "unreasonableness" in describing the deliberate-indifference standard. *See id.* at 873 ("[W]hen an employer responds to charges of co-worker sexual harassment, the employer can be liable only if *its response* manifests indifference *or unreasonableness* in light of the facts the employer knew or should have known.") (emphasis added). Under these circumstances, the district court did not

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

commit reversible error in failing to add an instruction to the effect that "deliberate indifference" does not equal "mere negligence."

Sycamore further argues that the district court should have given its proposed instruction explaining what conduct "is extreme enough to constitute hostile work environment." Sycamore Br. at 26. The district court instructed the jury that they must consider the totality of the circumstances in evaluating this claim:

> In determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment, you should consider the totality of all the circumstances. This means that, while individual incidents of alleged harassment may not alone create a hostile environment, the accumulated effect of such incidents may be sufficiently severe or pervasive to create a hostile environment.
>
> . . .
>
> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a single recitation of the words used or the physical acts performed. You should use your common sense and appropriate sensitivity to social context.

JA 74–75. Sycamore wisely does not contest the validity of the totality-of-the-circumstances approach. It instead claims that the court should have identified the following specific types of conduct that, "without more," do not establish hostile work environment:

> In determining whether the conduct is severe or pervasive enough to constitute a hostile work environment, you may consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

> A mere unfriendly work environment is not sufficient to establish liability; rather, the workplace must be permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the employee's employment and create an abusive working environment.
>
> Staring at someone, without more, is not generally sufficient to create a hostile working environment.
>
> Simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.
>
> Conduct must be extreme to amount to a change in the terms and conditions of employment.
>
> Title VII is not a general civility code; it was not designed to purge the workplace of vulgarity.

JA 42–43. The court acted well within its discretion in excluding this list for the basic reason that a hostile environment, as Sycamore concedes, may be the product of cumulative incidents that singly do not amount to harassment.

### III.

Next, Sycamore contends that the district court improperly admitted (1) testimony on an ultimate legal issue, (2) inadmissible hearsay and (3) statements protected by the attorney-client privilege. "This court reviews a district court's evidentiary rulings for abuse of discretion, and a district court's determination will be reversed only if the abuse of discretion caused more than harmless error." *Tompkin*, 362 F.3d at 897; *see also United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003). "However, a district court's conclusions of law, such as whether proffered evidence constitutes hearsay within the meaning of the Federal Rules of Evidence, are reviewed de novo."

- 10 -

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

*United States v. Levy*, 904 F.2d 1026, 1029 (6th Cir. 1990). A "[r]eversal based on improper admission of evidence is appropriate only when the admission interfere[s] with substantial justice." *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 677 (6th Cir. 2000) (quoting *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 382 (6th Cir. 1997)); *see also* Fed. R. Evid. 103(a).

A.

Sycamore argues that the district court abused its discretion in allowing the testimony of three witnesses that Smith's actions constituted sexual harassment under Sycamore's sexual harassment policy. Because the testimony in question was limited to the definition of sexual harassment under the district policy, not under governing law, the district court did not commit reversible error.

Janet Schultz, the sexual harassment officer for Sycamore's transportation department, testified on cross examination that Smith's conduct constituted "sexual harassment as [she] had been trained." JA 204–05. Earlier in Schultz's cross examination, Southerland established that Schultz's position included the duty of enforcing Sycamore's sexual harassment policy, and that she had been trained on sexual harassment pursuant to the policy.

Southerland asked Robert Szakovits, the district's human resource manager, whether the allegations against Smith "would constitute sexual harassment, in your opinion based upon what you know." JA 332. After Sycamore objected, the district court gave this limiting instruction:

> The definitions of whatever any witness gives here would not be a definition of sexual harassment. You will get a definition from the [c]ourt at the end of the case so you have an idea what it means. It is interesting to hear this witness's view of what sexual harassment constitutes for the Sycamore School District.

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

*Id.* Immediately following this instruction, Szakovits answered that "sexual harassment is in the eye of the beholder, I guess. I mean, whatever she felt sexual harassment was would be sexual harassment . . . . So yes, if she said she is sexually harassed, then I would be in a position to say [ ] [w]e need to investigate." JA 333.

Peggy Phillips, the district's Title IX officer, also acknowledged that Smith's conduct fell within the Sycamore policy's definition of sexual harassment. On direct examination, Southerland's attorney asked her about several parts of the district's policy. Only after this line of questioning did Phillips reluctantly admit on cross-examination that "Mr. Smith committed sexual harassment of Mrs. Southerland in violation of page [one] of Sycamore School District's sexual harassment policy, paragraph [four] specifically." JA 193.

The court did not abuse its discretion in allowing this testimony. Contrary to Sycamore's suggestion, the testimony did not go to the ultimate legal issue in the case; it went to the coverage of the district's policy, a situation quite similar to testimony this court approved in *Slayton*. There, we distinguished testimony about a policy from testimony on an ultimate legal issue, noting that "the internal policy clearly formed the predicate" of the testimony. *Slayton*, 206 F.3d at 676. Even though the court in this instance gave its limiting instruction on this testimony only once (after the second of the three witnesses' testimony), the instruction served to alleviate the risk that the jurors would confuse the testimony with the ultimate legal question before them. As in *Slayton*, moreover, the limiting instruction referred to "any witness," JA 332, and all three witnesses' testimony, combined with the questions as asked by Southerland's attorney, clearly limit the scope of the

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

answers to a consideration of the district policy, not the governing law. Under these circumstances, the testimony falls well short of "interfer[ing] with substantial justice," *id.* (quoting *Morganroth & Morganroth*, 123 F.3d at 382), and accordingly does not require a new trial.

B.

Sycamore next argues that testimony regarding (1) rumors floating around the bus compound that Smith and Southerland were having a relationship and (2) notes of Phillips and Buchholz regarding their investigations amounted to inadmissible hearsay. Again, we do not agree.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The rumor testimony and notes were not offered to prove the truth of the matters they asserted; they were used to show that Sycamore officials had knowledge of the problem, which was an essential element of the negligent-retention claim. *See, e.g., Stalbosky v. Belew*, 205 F.3d 890, 896 (6th Cir. 2000). Attempting to eliminate any confusion over the relevance of this testimony, the district court gave a limiting instruction on at least six separate occasions to this effect. The following admonition is illustrative:

> Now, the objections that you are hearing this morning relate to certain things that were heard by Mr. Buchholz in his job as a counselor at the Sycamore School District on sexual harassment matters in its investigation and the determination of whether the school district did everything it should in this situation to protect Mrs. Southerland, which was its obligation. And Counsel is asking Mr. Buchholz of information he obtained, and it is going to determine what was done in regard to that information. The information that Mr. Buchholz is relating that he heard is not being offered for the truth of what the person told Mr. Buchholz. It is being offered to

> show what Mr. Buchholz had in his mind when he was deciding or recommending to his superior what should be done in this case.

JA 339–40. Because most of the hearsay complaints concern testimony by Buchholz, Phillips and Schultz—the three district officials that Southerland claimed were responsible for some aspect of Sycamore's official response to the situation, Sycamore Br. at 21–23—the jury had every reason to understand that the district officials' knowledge, not the truth of the rumors and notes, was at issue. The remaining alleged hearsay was introduced during Southerland's testimony, and the district court gave a limiting instruction that Southerland's report of rumors should go only to "what [Southerland's] reaction was to the fact that rumors were circulating," JA 345, including whether she reported the rumor to Schultz. Under these circumstances, no error occurred.

Attempting to rebut this conclusion, Sycamore points to a portion of Southerland's closing argument, in which her attorney cites some of these rumors as "corroboration," JA 370, of Southerland's allegations against Smith. But a review of the record makes it just as plausible that Southerland's attorney was arguing that the copious rumors and reports established the school district's knowledge of the hostile work environment.

### C.

Sycamore next argues that the district court abused its discretion in allowing Phillips to testify about matters she discussed with Sycamore's legal counsel, John Podgurski. On cross-examination, Southerland's attorney asked Phillips: "[D]idn't Mr. Podgurski recommend to you way back in September when Mrs. Southerland first made her allegations of sexual harassment, didn't

- 14 -

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

Mr. Podgurski tell you this is very serious; we need in-service sexual harassment training for the bus drivers?" JA 169. After an overruled objection, Southerland's attorney nonetheless rephrased the question: "Isn't it true . . . one of the recommendations of Mr. Podgurski way back in September because of Mrs. Southerland's allegations was to conduct in-service training for the bus drivers?" JA 170. Phillips responded: "Yes. He told me this at the end of October, not at the beginning of the school year." *Id.*

We need not determine whether the attorney-client privilege applies to this testimony because its admission, even if erroneous, would not warrant a new trial. Ample evidence supports the jury's verdict in this case. And this short and somewhat confounding exchange—and the admission of evidence coming at the end of it—does not establish anything approaching substantial injustice to the appellant. *See Slayton*, 203 F.3d at 677.

IV.

Sycamore makes two remaining arguments on matters of law, which we review de novo. *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 598 (6th Cir. 2001).

A.

Without citing any authority, Sycamore briefly argues that negligent retention under Ohio law is actionable only when an employee harms a non-employee. That, however, is not the case. *See Peterson v. Buckeye Steel Casings*, 729 N.E.2d 813, 823 (Ohio Ct. App. 1999) (reversing and remanding, on other grounds, summary judgment for employer on *employee*'s negligent retention claim).

No. 03-4189
*Southerland v. Sycamore Community School District Board of Education*

B.

Finally, Sycamore argues that the district court erred in denying its motions for judgment as a matter of law. We disagree. In making this argument, Sycamore claims that if all of the contested evidence were stricken, the remaining evidence would fail to establish liability under Title VII. Sycamore Br. at 26–27. As the predicate for this argument has not been established (most of the evidence *was* properly admitted), we need not address this argument further.

V.

For these reasons, we affirm.